UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: _____

| | |
|---|---|
| PILAR ALBA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PIBERRY INSTITUTE, INC., MARION | ) |
| CARBERRY and VORICK PICOU, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

Plaintiff, PILAR ALBA ("Plaintiff") and other similarly situated individuals, sue the Defendants, PIBERRY INSTITUTE, INC., MARION CARBERRY and VORICK PICOU (collectively the "Defendants"), and allege:

## **NATURE OF ACTION**

1.      This is an action for money damages which arises out of Plaintiff's employment relationship with the Defendants, during which Plaintiff was subjected to sex, race, and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq.* ("FCRA"), and 42 U.S.C. § 1981, as amended; Battery; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Negligent Training and Supervision; and Negligent Retention.

## **JURISDICTION**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. § 1367, 28 U.S.C. § 1343(a) (3) and (4), and 42 U.S.C.A. § 1981 and 13981(e)(3).

1

3.     Plaintiff invokes this Court's jurisdiction over Defendants for their common law tort claims against her, individually, jointly, and severally, under 28 U.S.C.A § 1367(a).

4.     Plaintiff also invoke the supplemental jurisdiction of this Court to hear and decide claims arising under the laws of the State of Florida that are so related to claims in the action within the original jurisdiction of this district Court that they form part of the same case or controversy under Article III of the United States Constitution.  In particular, Plaintiff is bringing claims under the FCRA and Florida common law.

## VENUE

5.     Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of occurred within Miami-Dade County, Defendant has its principal place of business and resides within Miami-Dade County, and because the employment records of Plaintiff is stored or have been administered in Miami-Dade County.

6.     Plaintiff is a resident of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court.  Plaintiff is a covered employee for purposes of the Act.

7.     Defendants PIBERRY INSTITUTE, INC. (individually the "Corporate Defendant") and MARION CARBERRY and VORICK PICOU (Carberry and Picou collectively referred to as the "Individual Defendants"), are a Florida company and a Florida resident, respectively, having their main place of business in Miami-Dade County, Florida, where Plaintiff worked for Defendants, and at all times material hereto were and are engaged in interstate commerce. The Individual Defendant, upon information and belief, resides in Miami-Dade County, Florida.

8.     This is also an action for battery, intentional infliction of emotional distress, negligent training and supervision, and negligent retention under Florida common law.

## PARTIES

9.      At all times material, Plaintiff was a resident of Miami-Dade County, Florida.

10.     At all times material, Plaintiff was an "employee" as defined by 42 U.S.C. § 2000e(f) and Fla. Stat. § 760.02(10). Plaintiff specifically incorporates the definition of "employee."

11.     At all times material, Plaintiff was a "person" as defined by Fla. Stat. § 760.02. Plaintiff specifically incorporates the definitions of "employee" and "person."

12.     At all times material, the Corporate Defendant was a Florida profit corporation, doing business in Miami-Dade County, Florida.

13.     The Individual Defendant Marion Carberry (referred to herein as "Carberry") is, and at all times mentioned was, a resident of and conducting business in Miami-Dade County, Florida.

14.     The Individual Defendant Vorick Picou (referred to herein as "Dr. Picou" or "Picou") is, and at all times mentioned was, a resident of and conducting business in Miami-Dade County, Florida.

15.     At all times material, Defendants were a "person" and an "employer" as defined by 42 USC § 2000e(a) and (b) and Fla. Stat. § 760.02 (6) and (7). Plaintiff specifically incorporates the definitions of "person" and "employer."

16.     At all times material, Defendants employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

17.     At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

18.     Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

## PROCEDURAL REQUIREMENTS

19.     Plaintiff has complied with all conditions precedent in filing this action, to wit;

   a)  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Miami District Office on or about January 12, 2022.

   b)  Plaintiff was issued a Notice of Suit Rights as to all charges of discrimination and retaliation on or about November 11, 2022.

20.     Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## GENERAL ALLEGATIONS

21.     Plaintiff is a proud Latin woman, is a member of a protected class of Latin persons of Cuban ancestry and is also a member of a protected class of female citizens.

22.     Plaintiff worked for Defendants as a Medical Assistant Instructor from on or about April 27, 2021, until her wrongful termination on or about September 7, 2021. As a Medical Assistant Instructor, Plaintiff's job duties and responsibilities included, but was not limited to, providing instruction to students interested in the medical and nursing field, creating assessments for students, and preparing labs for students.

23.     Plaintiff has over ten (10) years of experience providing medical instruction and training.

24.     At the beginning of her employment, Plaintiff received, from Defendants, a scrubs uniform that she was instructed to wear. However, Plaintiff noticed that the uniform was too tight

and requested a larger size, but Defendant denied her requests. Dr. Picou, in particular, insisted that Plaintiff did not need a larger uniform size.

25.     Soon thereafter, Defendant informed Plaintiff that she did not have to wear scrubs and could wear jeans, as long as her pants did not have any holes or rips. Accordingly, Plaintiff began to wear her uniform some days and other days she wore casual clothing, such as jeans.

26.     Once Plaintiff started to wear jeans, Dr. Picou began to comment on her clothing, and on one occasion, stated, "Alba, this morning you looked very nice in the jeans you were wearing." Plaintiff felt very uncomfortable by Dr. Picou's comment.

27.     Corporate Defendant's Human Resources Manager, Bertha Lopez ("Lopez"), overheard Dr. Picou's inappropriate comment to Plaintiff, regarding her jeans, and called a meeting with Plaintiff. During the meeting, which only Lopez and Plaintiff attended, Lopez informed Plaintiff that she overheard Picou's comment regarding her jeans and expressed that she thought it would be better if Plaintiff wore her uniform, at all times, to work. Plaintiff objected to being singled out and treated differently than her co-workers by being banned from wearing casual clothes as her co-workers were permitted to do. Lopez told Plaintiff that it was better that she wears her scrubs to avoid *problems*, because her body was "too provocative". Plaintiff felt discriminated and retaliated against, and harassed because of her race, nationality and gender. Plaintiff requested a meeting with Respondent's owner, Individual Defendant Marion Carberry, (referred to herein as "Carberry"), and Lopez informed Plaintiff she would arrange the meeting. Plaintiff intended to inform Carberry of the Defendants' discriminatory treatment of her based on her sex, race and national origin.

28.     Plaintiff noticed that her co-workers were Caucasian and Asian and were not subjected to the same set of rules as Plaintiff.

29.     Dr. Picou was a male and Plaintiff believed that Dr. Picou was not of Latin descent.

30.     Throughout her employment, Corporate Defendant and its employees continuously harassed Plaintiff because of her sex, race and national origin. Particularly, Dr. Picou constantly made inappropriate comments and unwelcomed sexual advances toward Plaintiff. For example, during her first couple of weeks of work, Dr. Picou asked Plaintiff to go out with him after work, and Plaintiff rejected Dr. Picou's shocking request. Recognizing that Dr. Picou was her supervisor, and not wanting to offend him, in addition to clearly rejecting Dr. Picou, Plaintiff explained that she had children to go home to, hoping to dissuade Dr. Picou from asking her out on dates in the future.

31.     Despite Plaintiff's rejection, Dr. Picou continued to repeatedly make inappropriate advances toward Plaintiff, including but not limited to touching Plaintiff without her consent and in an unsolicited, unwanted and sexual manner. For instance, Dr. Picou would touch Plaintiff's breast under the false pretense that he was attempting to touch her lanyard ID badge which hung from her neck to her chest. Plaintiff did not welcome or invite Dr. Picou to touch her lanyard ID badge, chest, or breast, and would physically turn away from him when she noticed that he was reaching toward the chest area of her body.

32.     Almost daily, Dr. Picou would send Plaintiff unwelcomed text messages, asking her to go out on a date with him, to lunch, to dinner, to have drinks, and to meet him in his office late in the night. Picou would also text Plaintiff that he wanted to see her and would ask if he could come to her house.

33.     Plaintiff rejected all of Dr. Picou's advancements. However, Dr. Picou's flirtation persisted, and caused Plaintiff to fear for her safety and well-being.

34.     Plaintiff complained to Lopez and, once again, requested a meeting with Carberry. Plaintiff never received a response to her complaints and her request for a meeting with Carberry was not granted.

35.     Defendants, by doing nothing in response to Plaintiff's complaints, allowed the continued harassment of Plaintiff.

36.     As a consequence of Defendant's failure to adequately respond to Plaintiff's expressed concerns and complaints, Dr. Picou persisted in his sexual advances toward Plaintiff.

37.     Plaintiff repeatedly and clearly conveyed her disinterest in having anything but a professional relationship with Dr. Picou, but Picou's behavior only worsened.

38.     Despite the harassment, Plaintiff continued to perform her job well.

39.     Unfortunately, Dr. Picou's inappropriate advances did not cease, but only progressed. Picou became so emboldened that he propositioned Plaintiff to engage in a sexual relationship with him in exchange for money, stating to Plaintiff that he knew she needed the money because she was a single mother, and that she should "take one for the team".

40.     Dr. Picou's outrageous behavior was constant throughout Plaintiff's employment, and made Plaintiff feel humiliated and fearful.

41.     Plaintiff constantly refused Dr. Picou, and, at all times, regressed and/or objected Dr. Picou's inappropriate behavior.

42.     Dr. Picou's behavior worsened.

43.     In addition to his other harassing and inappropriate behavior toward Plaintiff, Dr. Picou formed a habit of requesting that Plaintiff meet with him in his office alone. Plaintiff felt a professional obligation to attend the meetings at Dr. Picou's request, despite her discomfort and fear. Plaintiff's fear was validated because when she would meet with Dr. Picou in his office, Dr.

Picou would close and lock the door to his office, locking Plaintiff in. Plaintiff noticed that Dr. Picou did not insist on constantly meeting with other employees, as he did with her. Plaintiff further noticed that when Dr. Picou would meet with other employees periodically, he would leave the door open. Plaintiff always asked Dr. Picou to keep the door open and expressed that it made her feel uncomfortable. Dr. Picou ignored Plaintiff's requests and always closed the door.

44.     Dr. Picou's behavior only increased Alba's fear.

45.     Also, on multiple occasions, Dr. Picou would approach Plaintiff from behind and press his genitals against her buttocks. Plaintiff did not welcome or invite Picou to touch her with his genitals or to touch her body.

46.     Plaintiff's fear of Dr. Picou worsened, and she began to experience anxiety and depression.

47.     Again, Plaintiff complained and expressed her concerns to Lopez about the constant sexual harassment and discrimination she was being subjected to. Defendant did nothing and ignored Plaintiff's complaints. In fact, Lopez responded that she did not want to get involved.

48.     Then, on or around August 9, 2021, during the evening, while Plaintiff was at work, Dr. Picou approached Plaintiff in the hallway and forcefully pushed her body back into the wall and pressed his body against Plaintiff's body. Plaintiff was extremely scared, disgusted, and trembling in fear. Plaintiff insisted that Dr. Picou let her go, but he continued to force Plaintiff against the wall, pressing his body against hers, even after Plaintiff's multiple requests to be released. After multiple pleads by Plaintiff, Picou smiled and then finally decided to free his grip on Plaintiff.

49.     At this point, Plaintiff's fear of Dr. Picou was heightened.

50.     Plaintiff reported all of the above actions to Lopez. Unfortunately, Defendants did not investigate the discriminatory and hostile behavior, did not reprimand or discipline any of the bad actors, and certainly did not stop the sexual harassment from reoccurring. In fact, Lopez responded by accusing Plaintiff of dressing or being provocative, demanded that Alba wear only scrubs to work for her own good because she was "built like a Latin woman", and specifically stated that she did not want to get involved.

51.     Defendants' responses, or lack thereof, caused Plaintiff to feel discriminated against based on her sex, race and national origin, throughout her employment.

52.     Plaintiff continued to meet with Lopez and to request to speak with Carberry.

53.     After Plaintiff's meetings with Lopez, Dr. Picou's behavior and harassment of Plaintiff intensified.

54.     Eventually, on or about August 19, 2021, Plaintiff was able to speak to Carberry regarding her concerns and the discriminatory and sexually harassing comments and conduct she endured during her employment. During the meeting with Carberry, Plaintiff informed Carberry of the constant discrimination and harassment she'd endured throughout her employment. Plaintiff explained that she reported Dr. Picou's behavior to Lopez on several separate occasions and that Lopez ignored her complaints, further discriminated against her, and specifically informed her that she did not want to get involved.

55.     In response to Plaintiff, Carberry was dismissive and did nothing.

56.     Then, later that same day, Carberry also made discriminatory comments and engaged in discriminatory conduct against Plaintiff due to her race and national origin. Particularly, during a meeting attended by Carberry and several instructors, including Plaintiff, Carberry stated that all Cubans were disgusting, upnoxious, should "go back", and should all die.

Plaintiff felt singled out, and that Carberry's comments were intentionally directed at her since Carberry knew that Plaintiff was Cuban. Plaintiff, courageously but respectfully, stated during the meeting, that Carberry's comments were inappropriate. Carberry quickly responded, with disdain, that all you Cubans should migrate back to Cuba. Plaintiff felt discriminated against and humiliated.

57.     Then, the very next day, on or about August 20, 2021, during a Staff Meeting, Carberry singled out Plaintiff again and told her co-workers that they should be afraid of Plaintiff because she is not the type of woman that people like. When Plaintiff confronted Carberry, she defended her statements by responding that Plaintiff was not friendly or sweet, and that she knew this by looking at Plaintiff. Plaintiff was shocked and disgraced by Carberry's conduct.

58.     Plaintiff felt retaliated against, in addition to violated, harassed, and extremely uncomfortable in Defendants' work environment.

59.     Despite her complaints, the discriminatory and harassing behavior of Defendants' managers and coworkers toward Plaintiff did not end, but rather worsened.

60.     On or about September 1, 2021, Plaintiff called Carberry to discuss Picou's continued sexual harassment, but was ignored. Thereafter, on September 2, 2021, Plaintiff texted Carberry, at which time Carberry instructed Plaintiff to call. During the phone call, Plaintiff once again informed Carberry of Dr. Picou's inappropriate advances and touching.

61.     Unfortunately, Carberry did not investigate the discriminatory and hostile behavior, did not reprimand or discipline any of the bad actors, and certainly did not stop the sexual harassment from reoccurring.

62.     Rather, in response to Plaintiff's complaints, Defendants terminated Plaintiff's employment on or about September 7, 2021.

63.     Throughout her employment, Plaintiff noticed that the Defendants did not allow any of its male employees to be subjected to sexually discriminatory, retaliatory and harassing treatment.

64.     Throughout her employment, Plaintiff further noticed that the Defendants did not allow any of its employees, who were not Latin citizens of Cuban ancestry, to be subjected discrimination, retaliation and harassment based on their race and/or national origin.

65.     Even after being terminated, Defendants continued to harass Plaintiff. Particularly, Dr. Picou stated to Plaintiff that she was terminated because she complained about him, and that if she wanted her job back, she needed to retract her complaints and say nothing happened. Additionally, Defendants gave Plaintiff bad job references to future employers, thereby negatively impacting Plaintiff's ability to obtain future employment.

66.     Plaintiff felt humiliated, depressed, and anxious because of all the above actions of the Defendants. Plaintiff sought medical care and treatment for the severe emotional trauma and distress caused by the Defendants' unrelenting discriminatory, retaliatory and harassing conduct toward her.

67.     All conditions precedent to bringing this action have occurred, been performed, or been excused.

68.     The Plaintiff has retained the undersigned counsel in order that her rights and interests may be protected. The Plaintiff has become obligated to pay the undersigned a reasonable attorneys' fee.

### COUNT I: VIOLATION OF TITLE VII – DISCRIMINATION BASED ON SEX (DISPARATE TREATMENT) AGAINST CORPORATE DEFENDANT

69.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 – 68 above as if set out in full herein.

70.     Plaintiff is a member of a protected class of female citizens.

71.     Plaintiff was and is qualified for her position.

72.     At all times material, Corporate Defendant intentionally engaged in unlawful employment practices and discrimination by, *inter alia*, treating Plaintiff differently from similarly situated employees in the terms and conditions of her employment because of her sex when, on several occasions, Corporate Defendant failed to investigate its employees' discriminatory and hostile behavior, reprimand or discipline the bad actors, and stop the sexual harassment Plaintiff's was subjected to from reoccurring. Particularly, Corporate Defendant intentionally engaged in unlawful employment practices and discrimination when it allowed Picou to continuously make unwelcomed advances towards Plaintiff, including, but not limited to, rubbing and pressing his genitals and forcefully pressing his body against Plaintiff's body, touching Plaintiff's breast, inappropriately touching Plaintiff without her permission, asking Plaintiff to have sexual intercourse with him, and repeatedly asking Plaintiff out to lunch, dinner, drinks and out on dates.

73.     The Plaintiff's sex was the motivating factor that caused the Corporate Defendant to discriminate against the Plaintiff.

74.     Plaintiff noticed that the Corporate Defendant did not allow any of its male employees to be subjected to the same type of disparate treatment.

75.     The disparate treatment of Plaintiff by Corporate Defendant was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Corporate Defend.

76.     Corporate Defendant, as Plaintiff's employer, was responsible for maintaining a working environment free from discrimination.

77.     As a direct and proximate result of the intentional violations by Corporate Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

78.     Furthermore, as a direct and proximate result of such actions by Corporate Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and prospective benefits solely because of Corporate Defendant's conduct.

79.     The unlawful employment practices complained of herein and the actions of Corporate Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Corporate Defendant for their violations of Title VII;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c.  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff prejudgment interest on her damages award;

e.  Award Plaintiff punitive damages;

f.  Enjoin the Corporate Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT II: VIOLATION OF TITLE VII BASED ON SEX (RETALIATION)**
**AGAINST CORPORATE DEFENDANT**

80.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

81.     Plaintiff is a member of a protected class of female citizens.

82.     Plaintiff was qualified to perform her job.

83.     Plaintiff engaged in protected activity when she complained to Corporate Defendant about the unwelcomed treatment on numerous occasions.

84.     Corporate Defendant intentionally engaged in unlawful employment practices and retaliation by ignoring Plaintiff's complaints about the unwelcomed treatment on numerous occasions, terminating Plaintiff's employment and then engaging in conduct to prevent Plaintiff from obtaining future employment.

85.     Corporate Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment.

86.     The Plaintiff's sex was the motivating factor that caused the Corporate Defendant to retaliate against the Plaintiff.

87.     As a direct and proximate result of the intentional violations by Corporate Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

88.     Furthermore, as a direct and proximate result of such actions by Corporate Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and prospective benefits solely because of Corporate Defendant's conduct.

89.     The unlawful employment practices complained of herein and the actions of Corporate Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Corporate Defendant for its violations of Title VII;

b. Award Plaintiff back pay, punitive damages, interest, front pay (or reinstatement), and any other damages allowed under Title VII;

c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

d. Award Plaintiff punitive damages;

e. Enjoin Corporate Defendant, its officers, agents, employees, and anyone acting in concert with them, from discriminating, harassing, and retaliating against Plaintiff and any employee;

f. Award Plaintiff reasonable costs and attorney's fees;

g. Award Plaintiff prejudgment interest on any damages award; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT III: VIOLATION OF TITLE VII – DISCRIMINATION BASED ON SEX (HOSTILE WORK ENVIRONMENT) AGAINST CORPORATE DEFENDANT

90.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

91.    Plaintiff is a member of a protected class of female citizens.

92.    Plaintiff was and is qualified for her position.

93.    Commencing shortly after Plaintiff's employment with the Corporate Defendant began, the Defendants engaged in a persistent pattern of severe and pervasive harassment involving discriminatory, racist, derogatory, disparaging and humiliating comments, statements, references, and treatment, as detailed in paragraphs 21 – 27, 29 – 55, and 57 – 68, which created a hostile environment for Plaintiff in the workplace. Particularly, during the course of Plaintiff's employment with the Corporate Defendant, Plaintiff was subjected to a hostile work environment when, on several occasions, Picou persistently made unwelcomed advances towards Plaintiff, including, but not limited to, when he rubbed and pressed his genitals and forcefully pressed his

15

body against Plaintiff's body, touched Plaintiff's breast, inappropriately touched Plaintiff without her permission, asked Plaintiff to have sexual intercourse with him, and repeatedly asked Plaintiff out to lunch, dinner, drinks and out on dates.

94.     The Plaintiff did not welcome the conduct described in paragraphs 21 – 27, 29 – 55, and 57 – 68, and advised the Defendant that such conduct was unwelcome.

95.     The Plaintiff's sex was the motivating factor that caused the Corporate Defendant to subject Plaintiff to the harassment.

96.     The harassment adversely affected the Plaintiff's psychological well-being.

97.     The harassment unreasonably interfered with the Plaintiff's work performance.

98.     The harassment to which the Plaintiff was subjected would affect the psychological well-being and unreasonably interfere with the work performance of a reasonable person.

99.     The harassment was sufficiently widespread, pervasive, and prevalent in the Corporate Defendant's workplace, at all times pertinent hereto, to charge the Corporate Defendant with constructive notice of it.

100.    The Plaintiff gave the Corporate Defendant actual notice of discrimination she was subjected to, based on her sex, throughout her employment by speaking with and complaining to her supervisor, Corporate Defendant's Human Resources department, and Corporate Defendant's owner.

101.    The Corporate Defendant failed to investigate the Plaintiff's complaints.

102.    The Corporate Defendant failed to take adequate remedial action.

103.    The harassment continued to occur following the Plaintiff's complaints.

104.    The Corporate Defendant was acting within the scope of its employment and furthering its objectives by doing nothing in response Plaintiff's complaints and allowing the continued harassment of Plaintiff.

105.    The Plaintiff sustained emotional suffering and injury attributable to the harassment.

106.    The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Issue an order enjoining the Corporate Defendant to cease and desist from the conduct described in Count III of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Corporate Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count III of this Complaint, and from all other forms of harassment in the future.

c.  Issue an order requiring the Corporate Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment, based on an individual's race and national origin, and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to harassment, based on an individual's race and national origin, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff punitive damages.

h.  Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT IV: VIOLATION OF THE FCRA – DISCRIMINATION BASED ON SEX (DISPARATE TREATMENT), AGAINST CORPORATE DEFENDANT

107.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

108.    At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

109.    Plaintiff is a member of a protected class of female citizens.

110.    Plaintiff was and is qualified for her position.

111.    At all times material, Corporate Defendant intentionally engaged in unlawful employment practices and discrimination by, inter alia, treating Plaintiff differently from similarly situated employees in the terms and conditions of her employment because of her sex when, on several occasions, Picou made unwelcomed advances towards Plaintiff, including, but not limited to, when he rubbed and pressed his genitals and forcefully pressed his body against Plaintiff's body, touched Plaintiff's breast, inappropriately touched Plaintiff without her permission, asked Plaintiff to have sexual intercourse with him, and repeatedly asked Plaintiff out to lunch, dinner, drinks and out on dates.

112.    The disparate treatment of Plaintiff by Corporate Defendant was due to Plaintiff's sex.

113.    The disparate treatment of Plaintiff by Corporate Defendant was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Corporate Defendant.

114.    Corporate Defendant, as Plaintiff's employer, were responsible for maintaining a working environment free from discrimination.

115.    As a direct and proximate result of the intentional violations by Corporate Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

116.    Furthermore, as a direct and proximate result of such actions by Corporate Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and prospective benefits solely because of Corporate Defendant' conduct.

117.    The unlawful employment practices complained of herein and the actions of Corporate Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Corporate Defendant for its violations of the FCRA;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a FCRA action;

c.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff prejudgment interest on her damages award;

e.  Award Plaintiff punitive damages;

f.  Enjoin the Corporate Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT V: RETALIATION BASED SEX AGAINST CORPORATE DEFENDANT, IN VIOLATION OF THE FCRA

118.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

119.    At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat.  § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

120.    Plaintiff is a member of a protected class of female citizens.

121.    Plaintiff was qualified to perform her job.

122.    Plaintiff engaged in protected activity when she complained to Corporate Defendant about the unwelcomed treatment on numerous occasions.

123.    Corporate Defendant intentionally engaged in unlawful employment practices and retaliation by ignoring Plaintiff's complaints about the unwelcomed treatment on numerous occasions, terminating Plaintiff's employment and then engaging in conduct to prevent Plaintiff from obtaining future employment.

124.    Corporate Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment.

125.    As a direct and proximate result of the intentional violations by Corporate Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

126.    Furthermore, as a direct and proximate result of such actions by Corporate Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and prospective benefits solely because of Corporate Defendant' conduct.

127.    The unlawful employment practices complained of herein and the actions of Corporate Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against Corporate Defendant for its violations of the FCRA;

b.  Award Plaintiff back pay, punitive damages, interest, front pay (or reinstatement), and any other damages allowed under the FCRA;

c.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Enjoin Corporate Defendant, its officers, agents, employees, and anyone acting in concert with them, from discriminating, harassing, and retaliating against Plaintiff and any employee;

f.  Award Plaintiff reasonable costs and attorney's fees;

g.  Award Plaintiff prejudgment interest on any damages award; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

21

**COUNT VI: VIOLATION OF THE FCRA – DISCRIMINATION BASED ON SEX**
**(HOSTILE WORK ENVIRONMENT) AGAINST CORPORATE DEFENDANT**

128.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

129.    At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat.  § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

130.    Plaintiff is a member of a protected class of female citizens.

131.    Plaintiff was and is qualified for her position.

132.    During the course of Plaintiff's employment with the Corporate Defendant, Plaintiff was subjected to a hostile work environment when, on several occasion, Picou persistently made unwelcomed advances towards Plaintiff, including, but not limited to, when he rubbed and pressed his genitals and forcefully pressed his body against Plaintiff's body, touched Plaintiff's breast, inappropriately touched Plaintiff without her permission, asked Plaintiff to have sexual intercourse with him, and repeatedly asked Plaintiff out to lunch, dinner, drinks and out on dates.

133.    The offensive and discriminatory remarks and conduct were offensive to Plaintiff and would be offensive to a reasonable person.

134.    The offensive and discriminatory remarks and conduct was due to Plaintiff's sex.

135.    The offensive and discriminatory remarks and conduct were severe, pervasive and altered the terms and conditions of Plaintiff's employment.

136. Corporate Defendant were aware of the hostile work environment Plaintiff was subjected to and took no remedial action to cease such behavior.

137. As a direct and proximate result of the intentional violations by Corporate Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish, including embarrassment, humiliation, emotional distress, and other forms of damages.

138. Furthermore, as a direct and proximate result of such actions by Corporate Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and prospective benefits solely because of Corporate Defendant' conduct.

139. The unlawful employment practices complained of herein and the actions of Corporate Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against the Corporate Defendant for its violations of the FCRA;

b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a FCRA action;

c. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d. Award Plaintiff prejudgment interest on her damages award;

e. Award Plaintiff punitive damages;

f. Enjoin the Corporate Defendant, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g. Award Plaintiff reasonable costs and attorney's fees; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT VII: RACE & NATIONAL ORIGIN DISCRIMINATION (DISPARATE TREATMENT) AGAINST CORPORATE DEFENDANT – TITLE VII**

140.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

141.    Plaintiff is a Latin citizen of Cuban ancestry, and therefore is a member of a protected class.

142.    The Plaintiff's race and national origin were motivating factors that caused the Corporate Defendant to discriminate against the Plaintiff.

143.    Specifically, Corporate Defendant's conduct toward Plaintiff, including but not limited to the comments, and derogatory statements and terms, in private and in the presence of Corporate Defendant's other employees, supervisors and managers, as detailed above in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68, were all discriminatory acts motivated by Plaintiff's race and national origin.

144.    The Plaintiff noticed that similarly situated employees, who were not Latin and of Cuban ancestry, were not discriminated against and treated differently in the terms and conditions of their employment because of their race and/or national origin.

145.    The Plaintiff sustained emotional suffering and injury attributable to the discrimination.

146.    The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Issue an order enjoining the Corporate Defendant to cease and desist from the conduct described in Count VII of this Complaint and from harassing Plaintiff in any manner whatsoever.

b. Issue an order requiring the Corporate Defendant to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count VII of this Complaint, and from all other forms of harassment in the future.

c. Issue an order requiring the Corporate Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment based on an individual's race and national origin, and taking suitable remedial action.

d. Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to harassment, based on an individual's race and national origin, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e. Award the Plaintiff back pay, including but not limited to pension benefits and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f. Award the Plaintiff compensatory damages for her emotional suffering.

g. Award the Plaintiff punitive damages.

h. Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i. Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT VIII: RACE & NATIONAL ORIGIN DISCRIMINATION (RETALIATION) AGAINST CORPORATE DEFENDANT – TITLE VII

147.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 -68 above as if set out in full herein.

148.    Plaintiff is a Latin citizen of Cuban ancestry, and therefore is a member of a protected class.

149.    The Plaintiff complained about discrimination. As a result, she was terminated.

150.    Specifically, Plaintiff complained about, reported and rejected Corporate Defendant's discriminatory conduct as detailed above in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68, to her supervisors, to the Corporate Defendant's human resources department, and to the owner of the Corporate Defendant, on multiple separate occasions, and Defendants did

not investigate the discriminatory and hostile behavior, did not reprimand or discipline any of the bad actors, and certainly did not stop the harassment and the name calling from reoccurring. Rather Corporate Defendant allowed the discriminatory conduct to continue and to worsen and then Corporate Defendant terminated Plaintiff's employment.

151.    Corporate Defendant intentionally engaged in unlawful employment practices and retaliation by ignoring Plaintiff's complaints about the unwelcomed treatment on numerous occasions, terminating Plaintiff's employment and then engaging in conduct to prevent Plaintiff from obtaining future employment.

152.    Corporate Defendant thereby retaliated against Plaintiff in the terms, conditions, and benefits of her employment.

153.    The Plaintiff's race and national origin were the motivating factors that caused the Corporate Defendant to discriminate against the Plaintiff.

154.    The Plaintiff sustained emotional suffering and injury attributable to the harassment.

155.    The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Issue an order enjoining the Corporate Defendant to cease and desist from the conduct described in Count VIII of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Corporate Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count VIII of this Complaint, and from all other forms of harassment in the future.

c.  Issue an order requiring the Corporate Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment, based on an individual's race and national origin, and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff in the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to harassment, based on an individual's race and national origin, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including but not limited to pension benefits and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff punitive damages.

h.  Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT IX: RACE & NATIONAL ORIGIN DISCRIMINATION (HOSTILE WORK ENVIRONMENT) AGAINST CORPORATE DEFENDANT – TITLE VII

156.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

157.    The Plaintiff is a Latin citizen of Cuban ancestry, and as such is a member of a group protected under Title VII from discrimination on the basis of race and national origin.

158.    Commencing shortly after Plaintiff's employment with the Corporate Defendant began, the Defendants engaged in a persistent pattern of severe and pervasive harassment involving discriminatory, racist, derogatory, disparaging and humiliating comments, statements, references, and treatment, as detailed in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68, which created a hostile environment for Plaintiff in the workplace. Particularly, during the course of Plaintiff's employment with the Corporate Defendant, Plaintiff was subjected to a hostile work environment when, on several occasions, Picou persistently made unwelcomed advances towards Plaintiff, including, but not limited to, when he rubbed and pressed his genitals and forcefully pressed his body against Plaintiff's body, touched Plaintiff's breast, and inappropriately

touched Plaintiff without her permission, asked Plaintiff to have sexual intercourse with him, and repeatedly asked Plaintiff out to lunch, dinner, drinks and out on dates.

159.   The Plaintiff did not welcome the conduct described in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68, and advised the Corporate Defendant that such conduct was unwelcome.

160.   The Plaintiff's race and national origin were the motivating factors that caused the Corporate Defendant to harrass the Plaintiff.

161.   The harassment adversely affected the Plaintiff's psychological well-being.

162.   The harassment unreasonably interfered with the Plaintiff's work performance.

163.   The harassment to which the Plaintiff was subjected would affect the psychological well-being and unreasonably interfere with the work performance of a reasonable person.

164.   The harassment was sufficiently widespread, pervasive, and prevalent in the Corporate Defendant's workplace, at all times pertinent hereto, to charge the Corporate Defendant with constructive notice of it.

165.   The Plaintiff gave the Corporate Defendant actual notice of discrimination she was subjected to, based on her race and national origin, throughout her employment by speaking with and complaining to her supervisor, Corporate Defendant's Human Resources department, and Corporate Defendant's owner.

166.   The Corporate Defendant failed to investigate the Plaintiff's complaints.

167.   The Corporate Defendant failed to take adequate remedial action.

168.   The harassment continued to occur following the Plaintiff's complaints.

169.    The Corporate Defendant was acting within the scope of its employment and furthering its objectives by doing nothing in response Plaintiff's complaints and allowing the continued harassment of Plaintiff.

170.    The Plaintiff sustained emotional suffering and injury attributable to the harassment.

171.    The Corporate Defendant acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Issue an order enjoining the Corporate Defendant to cease and desist from the conduct described in Count IX of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Corporate Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count IX of this Complaint, and from all other forms of harassment in the future.

c.  Issue an order requiring the Corporate Defendant to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of harassment, based on an individual's race and national origin, and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to harassment, based on an individual's race and national origin, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including but not limited to pension benefits and other employment benefits, which would have accrued if the Plaintiff's employment had not been terminated.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff punitive damages.

h.  Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT X: RACE AND NATIONAL ORIGIN DISCRIMINATION (DISPARATE TREATMENT) AGAINST CORPORATE DEFENDANT – FCRA

172.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

173.    At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat.  § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

174.    The Plaintiff is a member of protected class of Latin citizens of Cuban ancestry.

175.    During the course of the Plaintiff's employment with the Corporate Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of her race and national origin, as more fully described in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68of this Complaint.

176.    The discriminatory conduct referred to in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

177.    The Plaintiff was subjected to the conduct referred to in this Complaint because she is a Latin citizen of Cuban ancestry.

178.    Similarly situated employees who are not Latin individuals of Cuban ancestry were not subjected to the conduct described and referred to in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68 of this Complaint.

179.     During the course of the Plaintiff's employment with the Corporate Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of her race and national origin, as more fully described in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68.

180.     The Plaintiff was and is qualified for her position while working for the Corporate Defendant.

181.     The Corporate Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of her race and national origin in the terms, conditions, and privileges of her employment.

182.     As a direct and proximate result of the Corporate Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

183.     Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against him based on her race and national origin.

184.     The Corporate Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat.  § 760.10.

185.     The aforementioned actions of the Corporate Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.  Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Corporate Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d. Order the Corporate Defendant to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including punitive damages and attorneys' fees (448.104);

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief as the Court deems just and proper.

**COUNT XI: RACE AND NATIONAL ORIGIN DISCRIMINATION (RETALIATION)**
**AGAINST CORPORATE DEFENDANT – FCRA**

186. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

187. At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

188. The Plaintiff is a member of protected class of Latin citizens of Cuban ancestry.

189. During the course of the Plaintiff's employment with the Corporate Defendant, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of her complaints about discrimination.

190. Plaintiff's complaints about discrimination constitute an engagement in a protected activity.

191.     The discriminatory conduct referred to in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

192.     The Plaintiff was subjected to the conduct referred to in this Complaint because she complained about discrimination and the Corporate Defendant chose to do nothing in response to Plaintiff's complaints. For example, Plaintiff complained that Defendants were intentionally engaging in unlawful employment practices and discrimination by treating her differently from similarly situated employees in the terms and conditions of her employment because of her race and national origin when she was instructed to only wear scrubs, told her body was too provocative and that she was built like a Latin woman,  and when Defendant made offensive, derogatory comments and statements such as Cubans were disgusting, upnoxious, should "go back", and should all die.

193.     The Plaintiff was and is qualified for her position while working for the Corporate Defendant.

194.     The Corporate Defendant violated the Florida Civil Rights Act by retaliating against the Plaintiff because of her complaints about discrimination.

195.     As a direct and proximate result of the Corporate Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

196.     The Corporate Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat.  § 760.10.

197.     The aforementioned actions of the Corporate Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Corporate Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d. Order the Corporate Defendant to make the Plaintiff whole, by compensating him/her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief, as the Court deems just and proper.

### COUNT XII: RACE AND NATIONAL ORIGIN DISCRIMINATION (HOSTILE WORK ENVIRONMENT) AGAINST CORPORATE DEFENDANT – FCRA

198.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

199.    The Plaintiff is a Latin citizen of Cuban ancestry and as such is a member of a group protected under the FCRA on the basis of her race and national origin.

200.    Throughout Plaintiff's employment, the Defendants engaged in a persistent pattern of severe and pervasive harassment involving Plaintiff by treating her differently from similarly situated employees in the terms and conditions of her employment because of her race and national origin when, for example, she was instructed to only wear scrubs, Defendants told Plaintiff that her body was too provocative and that she was built like a Latin woman, Defendants made offensive, derogatory comments and statements such as Cubans were disgusting, upnoxious,

should "go back", and should all die. Defendants' conduct toward Plaintiff happened repeatedly, on a daily basis, and created a hostile environment for Plaintiff in the workplace.

201.    The Plaintiff did not welcome the conduct described in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68, and advised the Corporate Defendant that such conduct was unwelcome.

202.    The Plaintiff was subjected to the harassment because of her race and national origin.

203.    At all times material hereto, the Corporate Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat.  § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

204.    The Plaintiff is a member of protected class of Latin citizens of Cuban ancestry.

205.    During the course of the Plaintiff's employment with the Corporate Defendant, the Plaintiff was subjected to a discriminatory, hostile and offensive work environment because of her race and national origin, as more fully described in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68 of this Complaint.

206.    The discriminatory conduct referred to throughout this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person.

207.    The Plaintiff was subjected to the conduct referred to in this Complaint because she is a Latin citizen of Cuban ancestry.

208.     Similarly situated employees who are not Latin citizens of Cuban ancestry were not subjected to the conduct described and referred to in paragraphs 21 – 23, 27 – 29, 50 – 51, 54, 56 – 62, and 64 - 68 of this Complaint.

209.     The Plaintiff was and is qualified for her position while working for the Corporate Defendant.

210.     The Corporate Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of her race and national origin in the terms, conditions, and privileges of her employment.

211.     As a direct and proximate result of the Corporate Defendant's intentional conduct, the Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

212.     Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Corporate Defendant is a mere pretext for the actual reason for discriminating against him/her based on her race and national origin.

213.     The Corporate Defendant's actions were routine, malicious, and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

214.     The aforementioned actions of the Corporate Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Corporate Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from

36

engaging in any employment practice which discriminates on the basis of race and national origin.

d.  Order the Corporate Defendant to make the Plaintiff whole, by compensating him/her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.  Award a monetary judgment representing prejudgment interest;

f.  Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

g.  Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h.  Grant such other and further relief as the Court deems just and proper.

## COUNT XIII: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION – DISPARATE TREATMENT - AGAINST ALL DEFENDANTS

215.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

216.    Latin citizens of Cuban ancestry are a "race" within the meaning of 42 U.S.C.A. § 1981.

217.    Plaintiff is a Latin citizen of Cuban ancestry, and therefore is a member of a racial minority.

218.    At all times relevant, Plaintiff was in a contractual relationship with the Defendants within the meaning of 42 U.S.C. § 1981, as amended.

219.    During the course of Plaintiff's employment, Defendants violated Plaintiff's rights by depriving her of her rights to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by non-Latin American citizens of Cuban descent, in violation of 42 U.S.C.A. § 1981(b), as amended.

220.    During the course of Plaintiff's employment with Defendants, Plaintiff did not enjoy the same benefits, privileges, terms and conditions of employment, as have non-Latin American citizens of Cuban descent, who were employees of the Defendants.

221.    Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by non-Latin American citizens of Cuban descent citizens, in violation of 42 U.S.C.A. § 1981, as amended.

222.    Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the right to make and enforce contracts as enjoyed by non-Latin citizens, in violation of 42 U.S.C.A. § 1981, as amended.

223.    Defendants did not subject its employees who were not Latin American citizens of Cuban descent to a hostile work environment in which they are constantly physically and sexually abused, belittled, spoken to in a derogatory tone or expression, harassed, micromanaged, and disciplined as was Plaintiff, who is of the Latin race and Cuban ancestry. This disparity in the Defendants' treatment of Plaintiff, and/or response or lack thereof to her complaints and pleas for help which caused Plaintiff to be subjected to batteries, discrimination, and a hostile work environment, was solely on the basis of Plaintiff's race and/or national origin, as those terms are used under 42 USC § 1981.

224.    Through Defendants' actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

225.    During the course of Plaintiff's employment with Defendants, Plaintiff was subjected to a discriminatory, hostile, and offensive work environment because of her race/ethnicity.

226.    Defendants, at all times, had knowledge of the discriminatory acts and conduct Plaintiff was subjected to by Defendants and/or Corporate Defendant's employees, and as described in this Complaint at paragraphs 21 - 68.

227.    Despite knowing about the unlawful actions, Defendants failed to take action. Based on information and belief, Defendants did not admonish the bad actors, nor did Defendants, fire, suspend, reprimand, or investigate these employees, or Plaintiff's complaints and expressed concerns.

228.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

229.    As a direct, legal, and proximate result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and Plaintiff has suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

230.    In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff' favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

b.  Award Plaintiff actual damages suffered;

c.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees, and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**JURY TRIAL DEMAND**

Plaintiff demand trial by jury of all issues triable as of right by jury.

**COUNT XIV: VIOLATION OF 42 U.S.C. § 1981 – RACE AND NATIONAL ORIGIN RETALIATION AGAINST CORPORATE DEFENDANT**

231.  The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

232.  Latin citizens of Cuban ancestry are a "race" within the meaning of 42 U.S.C. § 1981.

233.  Plaintiff is a Latin citizen of Cuban ancestry, and therefore is a member of a racial minority.

234.  At all times relevant, Plaintiff was in a contractual relationship with the Corporate

235.  Defendants within the meaning of 42 U.S.C. § 1981, as amended.

236.  On or about April 27, 2021, during the course of Plaintiff's employment, the Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

237.  During the course of Plaintiff's employment, since on or about April 27, 2021, Plaintiff did not enjoy the same benefits, privileges, terms and conditions of employment, as have non-Latin, Cuban employees of the Corporate Defendant.

238.    Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981, as amended.

239.    Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the right to make and enforce contracts as enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981, as amended.

240.    Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff' race/ethnicity, by continuing to employ Picou after becoming aware of Plaintiff's complaints and Defendants' discriminatory conduct toward Plaintiff.

241.    Plaintiff complained of Defendants' discriminatory and abusive conduct.

242.    Despite Plaintiff's complaints and Defendants' knowledge of the discriminatory acts and/or conduct, Defendants took no appropriate remedial action.

243.    Upon information and belief, after Plaintiff endured severe and pervasive harassment, hostility, and discrimination from the Defendants, culminated by Individual Defendant Picou's repeated sexual advancements toward Plaintiff, Picou's batteries against Plaintiff, and Defendants' inconceivable racially discriminatory comments. Despite Plaintiff's complaints and Defendants' knowledge of the harassment, hostility and discrimination Plaintiff was subjected to, Defendants maintained the same offensive, unsafe, hostile, abusive and physically harmful environment, even after Plaintiff informed Defendants that she was afraid to work with Picou.

244.     When the Corporate Defendant continued to employ Picou, Lopez and Carberry, and Defendants failed to discipline or reprimand any of the bad actors, after Plaintiff's complaints, the Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of his employment as is enjoyed by citizens of non-Latin, Cuban ancestry or descent, in violation of 42 U.S.C.A. § 1981(b), as amended.

245.     When the Defendants terminated Plaintiff, the Defendants prevented Plaintiff from enjoying the same benefits, privileges, terms and conditions of employment, as have citizens of non-Latin, Cuban ancestry or descent, who remained employed by the Corporate Defendant.

246.     Plaintiff's termination denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by citizens of non-Latin, Cuban ancestry or descent, in violation of 42 U.S.C.A. § 1981, as amended.

247.     Plaintiff's termination denied Plaintiff the right to make and enforce contracts as enjoyed by citizens of non-Latin, Cuban ancestry or descent, in violation of 42 U.S.C.A. § 1981, as amended.

248.     The Defendants knowingly intended to retaliate against Plaintiff on the basis of Plaintiff's race or ancestry.

249.     Upon information and belief, Defendants, at all times material, participated in and supported the retaliatory acts and conduct described herein.

250.     Plaintiff's race and ancestry was a motivating factor that caused the Defendants to retaliate against Plaintiff for complaining about the discriminatory conduct.

251.     As a direct, legal, and proximate result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and

they have suffered humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

252.    Plaintiff has suffered damages of an on-going and continuous nature.

253.    In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff' favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

b.  Award Plaintiff actual damages suffered;

c.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT XV: VIOLATION OF 42 U.S.C. § 1981 – RACE AND NATIONAL ORIGIN DISCRIMINATION – HOSTILE WORK ENVIRONMENT**

254.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

255.    Latin citizens of Cuban ancestry is a "race" within the meaning of 42 U.S.C.A. § 1981.

256.     Plaintiff is a Latin citizen of Cuban ancestry, and therefore is a member of a racial minority.

257.     At all times relevant, Plaintiff was in a contractual relationship with the Defendants within the meaning of 42 U.S.C. § 1981, as amended.

258.     During the course of Plaintiff's employment with Corporate Defendant, the Defendants violated Plaintiff' rights by depriving her of her rights to the enjoyment of all benefits, privileges, terms and conditions of her employment contracts as is enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

259.     During the course of Plaintiff's employment with Defendants, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have non-Latin, Cuban employees.

260.     Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981, as amended.

261.     Defendants did not subject their employees who were not Latin citizens of Cuban ancestry to a hostile work environment in which they are constantly physically and sexually abused, belittled, spoken to in a derogatory tone or expression, harassed, micromanaged, and disciplined as was Plaintiff, who is a Latin citizen of Cuban ancestry. This disparity in the Defendants' treatment of Plaintiff, and/or response or lack thereof to her complaints and pleas for help which caused Plaintiff to be subjected to batteries and a hostile work environment, was solely on the basis of Plaintiff's race, as that term is used under 42 USC § 1981.

262.     Defendants' treatment, practices and policies directed toward Plaintiff, denied Plaintiff the right to make and enforce contracts as enjoyed by non-Latin, Cuban citizens, in violation of 42 U.S.C.A. § 1981, as amended.

263.     Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race/ethnicity.

264.     During the course of Plaintiff's employment with Defendants, Plaintiff was subjected to a discriminatory, hostile, and offensive work environment because of her race/ethnicity.

265.     Defendants, at all times, had knowledge of the discriminatory acts and conduct as described in this Complaint.

266.     Despite Plaintiff's complaints and Defendants' knowledge of the discriminatory acts and/or conduct, Defendants took no appropriate remedial action. Defendants failed to admonish, fire, suspend, reprimand, or investigate the bad actors.

267.     The discriminatory environment was so pervasive that it amounted to a hostile work environment for Plaintiff.

268.     As a direct and proximate result of the foregoing, Plaintiff suffered embarrassment, humiliation, emotional distress, pain and mental anguish, and other forms of damage.

269.     As a direct, legal, and proximate result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and they have suffered anguish, humiliation, distress, pain and mental anguish, inconvenience and loss of enjoyment of life, thereby entitling Plaintiff to damages in an amount to be proven at trial.

270.     In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

b.  Award Plaintiff actual damages suffered;

c.  Award Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress, pain and mental anguish Plaintiff has suffered;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees, and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff demand trial by jury of all issues triable as of right by jury.

### COUNT XVI: BATTERY AGAINST INDIVIDUAL DEFENDANT, VORICK PICOU

271.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

272.     Throughout Plaintiff's employment, when Picou repeatedly touched Plaintiff, as described in paragraphs 22, 31, 45, and 48 - 49, he acted intending to cause harmful or offensive contact with Plaintiff, or an imminent apprehension of such contact.

273.     Plaintiff did not welcome Picou to touch, hold, aggressive grab, or rub or press his body against her body, and therefore, Picou engaged in unwelcomed and actual offensive contact with Plaintiff.

274.     Plaintiff has been damaged as a result of the intentional and offensive contact perpetrated by Picou.

275.     Picou's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Award damages for Plaintiff' past and future lost earnings;

b.   Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.   Award a monetary judgment representing prejudgment interest;

d.   Award Plaintiff punitive damages;

e.   Award any other compensation allowed by law; and

f.   Grant Plaintiff such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT XVII: SEXUAL BATTERY AGAINST INDIVIDUAL DEFENDANT, VORICK PICOU

276.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

277.     When, throughout Plaintiff's employment with Corporate Defendant, Picou would touch, grab and rub up against Plaintiff's body, including but not limited to those times he engaged in this offensive conduct under the guise of reaching for Plaintiff's lanyard or passing by her, Picou

acted intending to cause sexual, harmful, or offensive contact with Plaintiff, or an imminent apprehension of such contact.

278.    Picou, by touching Plaintiff's breast and buttocks, or by rubbing or forcefully pressing his body against Plaintiff, engaged in actual offensive contact with Plaintiff.

279.    Plaintiff did not consent to Picou's conduct toward her.

280.    As a direct and proximate result of Picou's unwelcomed, intentional and offensive touching of Plaintiff, alleged above, Plaintiff has been damaged. Plaintiff now suffers from mental anguish, loss of capacity for the enjoyment of life, loss of earnings and the loss of ability to earn money. The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

281.    Picou's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Award damages for Plaintiff' past and future lost earnings;

b.  Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.  Award a monetary judgment representing prejudgment interest;

d.  Award Plaintiff punitive damages;

e.  Award any other compensation allowed by law; and

f.  Grant Plaintiff such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT XVIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST INDIVIDUAL DEFENDANTS

282.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 -
68 above as if set out in full herein.

283.     Picou's conduct was intentional or reckless, that is, he intended his behavior when
he knew or should have known that emotional distress would likely result.

284.     Picou's conduct was unwelcomed, invasive, persistent, and so outrageous, that his
conduct toward Plaintiff surpassed all bounds of decency and is regarded as odious and utterly
intolerable in a civilized community.

285.     Picou's conduct toward Plaintiff caused Plaintiff to suffer severe emotional distress
that has had a physical impact on Plaintiff.

286.     The outrageous conduct portrayed by Picou, was directed at Plaintiff in the course
and scope of employment.

287.     As a direct and proximate result of the outrageous acts described herein, Plaintiff
sustained mental pain and suffering, emotional distress, mental anguish, inconvenience and loss
of capacity for the enjoyment of life, and loss of earnings and the loss of ability to earn money.

288.     Picou's acts were done knowingly, willfully, and with malicious intent, and
Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Award Plaintiff compensatory damages for embarrassment, anxiety, humiliation and
    emotional distress Plaintiff has and continues to suffer;

b.  Award Plaintiff monetary judgment representing prejudgment interest;

c.  Award Plaintiff punitive damages;

d.  Award any other compensation allowed by law; and

e.  Grant Plaintiff such other and further relief as this Court deems equitable and just.

**JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

**COUNT XIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
AGAINST CORPORATE DEFENDANT**

289.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

290.    Corporate Defendant owed Plaintiff a ministerial, operational, and non-discretionary duty to take reasonable precautions to protect Plaintiff, and other employees similarly situated to Plaintiff, from harassment, abuse, and discrimination that can be reasonably anticipated.

291.    Corporate Defendant negligently failed to protect Plaintiff from harassment, abuse, and discrimination as more fully described above, that could have been reasonably anticipated.

292.    Throughout Plaintiff's employment with Corporate Defendant, Picou inflicted sexual battery upon Plaintiff and subjected Plaintiff to an abusive and hostile work environment, despite Plaintiff's multiple complaints to Picou, Lopez and Carberry.

293.    During the course of the employment of Picou, Corporate Defendant became aware or should have become aware of Picou's unlawful behavior toward Plaintiff and other Corporate Defendant employees.

294.    Specifically, Plaintiff complained multiple times, in detail to Picou, Lopez and Carberry, who are all agents of the Corporate Defendant.

295.    Corporate Defendant's negligent failure to protect Plaintiff from harassment, abuse, and discrimination was done in bad faith.

296.    As a result of Corporate Defendant's negligence, Plaintiff has experienced severe and extreme emotional distress that has had a physical impact upon Plaintiff.

297. Plaintiff request that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against all Defendants in their individual capacities.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Award Plaintiff compensatory damages for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

b. Award Plaintiff monetary judgment representing prejudgment interest;

c. Award Plaintiff punitive damages;

d. Award Plaintiff costs, expenses, reasonable attorneys' fees and any other compensation allowed by law; and

e. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT XX: NEGLIGENT TRAINING AND SUPERVISION
## AGAINST CORPORATE DEFENDANT

298. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

299. Corporate Defendant, during the times mentioned was, and now is, engaged in the career training and education business.

300. At all times relevant herein, Picou, Lopez and Carberry, were employees, agents, and / or representatives of Corporate Defendant and was charged by Corporate Defendant with supervising Plaintiff.

301. Throughout Plaintiff's employment with Corporate Defendant, Picou, Lopez and Carberry inflicted battery, harassment, extreme emotional distress and discriminatory treatment upon Plaintiff and subjected to Plaintiff to an abusive and hostile work environment.

302. Corporate Defendant was negligent in failing to adequately train and supervise its employees, including Picou, Lopez and Carberry. Corporate Defendant's negligent failure to train and supervise was done in bad faith.

303. As a result of Corporate Defendant's negligence, Plaintiff was deprived of the benefits of her employment as a Corporate Defendant Medical Assistant Instructor and suffered physical and emotional injuries alleged in the complaint.

304. Despite knowing about Picou's, Lopez' and Carberry's unlawful actions, Corporate Defendant failed to take action. Upon information and belief, Plaintiff understands that Corporate Defendant did not admonish Picou, Lopez or Carberry, nor did the Corporate Defendant fire, suspend, reprimand, or investigate either of these employees. Instead, Corporate Defendant fired Plaintiff.

305. As a result of Corporate Defendant's actions, Plaintiff has been damaged.

306. Plaintiff requests that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against Corporate Defendant.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

b. Award a monetary judgment representing prejudgment interest on his damages award;

c. Award any other compensation allowed by law;

d. Grant Plaintiff such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT XXI: NEGLIGENT RETENTION AGAINST CORPORATE DEFENDANT

307.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 68 above as if set out in full herein.

308.    Corporate Defendant, during the times mentioned was, and now is, engaged in the career training and education business.

309.    At all times relevant herein, Picou, was an employee, agent, and /or representative of Corporate Defendant and was charged by Corporate Defendant with supervising Plaintiff.

310.    Upon information and belief, Picou remained an employee of the Corporate Defendant, after Corporate Defendant terminated Plaintiff.

311.    Throughout Plaintiff's employment with Corporate Defendant, Manager Picou was negligent in that he inflicted sexual battery upon Plaintiff and subjected to Plaintiff to a discriminatory, abusive and hostile work environment.

312.    During the course of Picou's employment, Corporate Defendant became aware or should have become aware of Picou's unlawful behavior toward Plaintiff.

313.    Specifically, Plaintiff complained in detail to Picou, Lopez and Carberry, who were/are employees, agents and/or representatives of the Corporate Defendant.

314.    Despite knowing about Picou's unlawful actions, Corporate Defendant failed to take action. Upon information and belief, Plaintiff understand that Corporate Defendant did not admonish Picou, nor did the Corporate Defendant, fire, suspend, reprimand, or investigate these employees. Instead, Corporate Defendant fired or constructively discharged Plaintiff.

315.    Corporate Defendant were careless and negligent in retaining Picou as an employee and in permitting him to work for Corporate Defendant when Corporate Defendant knew, or by adequate investigation, could have known, that Picou tended to discriminate against Plaintiff, and

to engage in battery and other inappropriate and aggressive behavior against employees such as Plaintiff, and that by doing so, he could harm Plaintiff or other citizens similarly situated to her.

316.    As a result of Corporate Defendant' actions, Plaintiff has been damaged.

317.    Plaintiff suffered bodily injuries and resulting pain and suffering, mental anguish, loss of capacity for the enjoyment of life, loss of earnings and loss of ability to earn money. Plaintiff has suffered losses that are either permanent or continuing, and Plaintiff will suffer the losses in the future.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

b.  Award a monetary judgment representing prejudgment interest on his damages award;

c.  Award any other compensation allowed by law; and,

d.  Grant Plaintiff such other and further relief as this Court deems equitable and just.

## <u>JURY TRIAL DEMAND</u>

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

Dated: January 19, 2023.

Respectfully submitted,

By: s/ Tanesha W. Blye
Tanesha W. Blye, Esquire
Fla. Bar No.: 738158
Email: tblye@saenzanderson.com
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

*Attorneys for Plaintiff*